My name is David Bettencourt and I'm the new counsel for defendant Kekahuna and I think this case is an example of how not to take a guilty plea and that's why the defendant appellant moved to withdraw the guilty plea when you realize that he'd been caught in the sea change of law as this court described it in sentencing mandatory upon the judges possibly with the right of jury trial on certain issues to a completely free-for-all sentencing system in the post-Booker fan fan era. You're not complaining about that are you? I think that Booker's turned out to be a very disappointing case in that the advisory certainly means that more advisory to some than to others and that the actual sentencing has not changed substantially in the trial courts following Booker and fan fan but at least it's potentially a step in the right direction but that's because you get a whole generation of judges very used to it. Well that's they've never done really article 3 sentencing you know they get to do the kind of sentencing where they say Congress tells me to do this and so I have to do it. Yeah they're used to being told. Go ahead. Mr. Kekahuna got caught in between this. He changed counsel to the counsel who represented him in the guilty plea in sentencing purely for sentencing because he had never intended to go to trial as the hearing on the conflict of interest revealed and then proceeds to later claim that he intended to enter sentence without admitting drug elements at all as far as the weight or purity of the drug but that did not require him seemingly to object to the first pre-sentence report and saying these are not things we admitted at the time of the sentence. There was a problem with the method that Judge Mulway used where she had the government list the things that they believe the defendant was guilty of and asked the defendant to tell us what you don't agree with. Basically presuming him guilty unless he specifically denied some of those elements. Well she required the prosecutor to tell what things would have to be tried to a jury if he didn't plead so he was advised of that and said he understood. He did and as to the elements of the offense but the question that arose as to whether he had pled because it came up only at the guilty plea hearing to a judge and that of course would be the determinative factor in sentencing. There was no benefits to the guilty plea at all other than preserving the right to appeal to this court because that's the only thing that you give up in a sentencing bargain with the government is your right to appeal except for ineffective assistance of counsel. But he had to know that he was pleading for example possession with intent to distribute more than 50 grand. That's right here on the record. Mr. Mulek laid that all out. He laid out that the conspiracy because what he actually laid out was this is what you agreed to do and your agreement violated the law and the agreement was to distribute more than 50 grand. That was a goal of the conspiracy. But that did not admit that 50 grand as to his personal responsibility under the guidelines and under the conspiracy for what he personally had done. And it came up only at the sentencing hearing. I mean at the guilty plea hearing and what is a transcript that turns out to have some serious problems in the transcript so that it's very difficult to determine what actually took place. The government actually submitted its new and improved version of the guilty plea transcript as an exhibit at a later hearing because they were so unsatisfied with the record that came off of the tape recording that the court was relying upon. It had some vaguenesses in it and had complete blanks in it. But what the defendant did according to his counsel. This plea conclusion we have, are you saying it's not accurate? I'm saying that there are, it indicates itself inside the transcript that there were things that were unintelligible. Well that's true in almost every transcript. It is becoming more frequent that we don't have. It's always been that way. It's always been that way. But when the government specifically started mentioning the Molokai transaction which was listed in the indictment as an overt act but was not listed against this defendant, I think she had to take extra caution to ensure exactly what was the defendant admitting because it was her statement that she would not accept, Thomas didn't exist then, but she would not accept a Thomas plea where there was no admission of drug amount. And she says very clearly if it happened, it had to have happened by accident, but this was post Blakely. I'm pretty careful on these things. I don't think I made a mistake. I think I got admission as to drug amount. According to Mr. Green and his motion to withdraw the guilty plea, he clearly states in that which the government relies upon to show his confidence that there was no intent to plead to a drug amount. Now that may be a post hoc rationalization once he read Thomas and a few of the other cases that came out in the meantime prior to what turned out to be Booker and Fanfan, but that is in fact in the record that he had attempted to plead guilty without admitting a drug amount. Now whether he achieved that or not is debatable by looking at the record. If it is in fact debatable and that was his intention, then the defendant did not get effective assistance of counsel at the time of the guilty plea. But the real question is did the court apply a proper standard in denying Mr. Kekahuna's motion to withdraw his guilty plea? She applied the standard of I have to determine whether or not this plea is valid. Rather than was there a fair and just reason for her to allow a guilty plea to be withdrawn? This is not a common procedure. It doesn't happen overnight. People aren't racing back to the courts to withdraw their guilty pleas. They may fear if they get their wish, they may turn out to be worse. And that may be in fact Mr. Kekahuna's fate. He got washed around by the sea chains of sentencing. You may end up on the reef again yet. We are not through with this. But the fact is that she applied the wrong standard to judging whether or not he should be allowed to withdraw the guilty plea. And I think the proper course under these facts where you have that kind of transcript of the guilty plea, say okay, you want your day in court? You'll get it. You may regret it, but you'll get it. And that's what the purpose of this appeal is, is that he had apparently some sort of, he hired counsel purely for sentencing or for guilty plea and sentencing. They thought they had something worked out under the then-shifting law. Maybe they predicted Booker would come out different than he did. But it was post-Blakely, so it was on everybody's mind. And it certainly did not work out in this case. And it clearly reflects on the defendant's knowledge of whether or not he was going to receive a sentencing hearing that was meaningful. I'd like to reserve my minute and 16 seconds left. Thank you. Good morning, Your Honors. Beverly Weiss, Amashima, Assistant U.S. Attorney for the United States. I think the transcript of the Rule 11 proceeding is very clear. Although Mr. Neelick did supplement with his own version to clarify the portions that were unintelligible, I think the core of the transcript that was prepared shows that he was going to receive a sentencing hearing. That Judge Mulway did not abuse her discretion in denying the motion to withdraw a guilty plea. And I say that because right at the outset, and if you look at the defendant's supplemental excerpt of records starting on 39 and all the way up to about 42, the judge very carefully goes through what the counts in the indictment require. She mentions the fact that count one, the conspiracy count, charges the defendant with an agreement or conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine. And then she advises the defendant of his rights to a jury trial and to have a jury make a determination beyond a reasonable doubt as to his guilt or innocence. And then she turns to Mr. Neelick to recite the essential elements of the offense that he has to prove. So let me just interrupt you for a second. Did she explain all the elements of a possession charge, the judge? Mr. Neelick recited all the conspiracy to distribute and possess with intent to distribute charges. And that's on page 41 of the defendant's supplemental excerpt. Are you answering my question? I mean, wasn't there a separate possession charge? No, Your Honor. It was a conspiracy to distribute and possess with intent to distribute as part of just the conspiracy charge. It was all part of just count one, which was just a conspiracy charge. Okay. All right. So Mr. Neelick was the one, and this is Judge Mulway's procedure. She has the prosecutor set forth what the essential terms are. Mr. Neelick specifically indicated that in order to prove that agreement to distribute and possess with intent to distribute, the government had to show it was more than 50 grams. He said that several times, and he mentioned that was set forth in two separate transactions that Mr. Kekahuna engaged in. And that was the so-called Molokai transaction, as well as this generic one pound of ice that was referenced later in the recitation of the facts. Now, the judges looked at the entire plea colloquy to find that the plea was valid, that the plea was knowing and intelligent, that Mr. Kekahuna understood exactly what it was he was admitting to. Counsel argues that he reserved, that defendants somehow reserved his right to have a plea that did not indicate a specified amount of drugs. There's nowhere in the record that indicates that. The only thing Mr. Green, the formal counsel reserved, was to say Mr. Kekahuna is not implicating his brother, Alan Kekahuna, in this offense. That's the only thing we disagree with as far as Mr. Neelick's proffer of evidence. And when the judge turned to the defendant and said, okay, Mr. Kekahuna, you heard what Mr. Neelick said. Do you agree or disagree with what he has said? Mr. Green had stepped up and said, okay, the only thing we disagree with was the involvement of the brother. He is not implicating his brother. And the judge then turned to Mr. Kekahuna and directly asked him, okay, you tell me in your own words what it is you did that makes you guilty. And he said, I took a package and gave it to Politanilati, defendant number one in this case, and I took the money and that was my role. And the judge says, and what did you think was in there? He says, drugs. Did you know what kind of drugs? I think crystal methamphetamine. And then she asked him, and the government is saying that if they got those drugs and they took it to a lab, it would be at least 50 grams of methamphetamine. Do you agree or do you disagree with that particular measurement? And the defendant said, I agree. And the judge is looking at the totality of the whole plea colloquy to find that that satisfies the requirements of Thomas. And as the court well knows, Thomas came out, what, eight months after this particular change of plea. So I think that the defendant certainly entered this plea knowing what his rights were and intended to waive that and enter a plea of guilty. Thomas vacated the sentence, not the guilty plea. That's correct, your honor. That's correct. But again, after Thomas, our judges were very, very careful about specifically eliciting from the defendant and telling the defendant, you have a right to a jury trial beyond a reasonable doubt on the quantity. And as prosecutors, we were always very careful to make that. But I think the record in this case shows that the judge essentially did that. The defendant knew that he had that right. And he was pleading guilty like a week before the trial. He wanted to plead guilty. That was the reason Mr. Green came into the case. So on this record, we don't believe that there's any basis for reversing the judge. She found a fair and just reason. He did not enter the plea unknowingly or without knowing his rights. And again, I don't think there's harm. She sentenced him below the advisory guidelines. He got 120 months. The advisory guidelines were 121 to 151. And as you can see from the record, there were many, many hearings on this. There were two or three continued sentencing hearings. And on one of them, the February, I think the February 17th, she asked the defense if they wanted an opportunity for an evidentiary hearing on the drug quantity. She let them break for an hour. They discussed whether that was something they wanted. They came back and said, no, your honor, we're going to stand on this. And she said, are you sure you want an evidentiary hearing? We'll give it to you if you want. They said no. And then, as it turned out later, and that's addendum number eight to the pre-sentence report, Mr. K. Kahuna submitted to the court, which she considered as part of the sentence, a typewritten letter in which he specifically admitted his involvement in the murder. And it was a Molokai package for which the government did seize. And we had lab reports that showed it was 222 grams of ice. So there's no harm here. We think that she did meet her requirements under Thomas. We think it was a valid plea and we think the conviction should be affirmed. Do you have any response to the argument that she really, that the judge looked to see whether it was a valid plea instead of whether there was a fair and just reason for it? Well, I think it's a very close, I mean, she looked at whether there was a fair and just reason. That's the standard. And part of that is whether the plea was voluntary or not. So even though she was looking at whether it was valid, I think I think that can be equated to mean the same thing. Frankly, I don't see a big difference in that. Any other questions? Thank you. Thank you. The indictment also charged Mr. Kekaluna with conspiracy to distribute 500 grams of coke. Yet he wasn't sentenced for anything on that, even though that was read to him at the time of the sentencing hearing also because he didn't have personal responsibility for that. Our position is that if you give any credence to what his counsel said at the various hearings, it was counsel's intent, albeit somewhat ill demonstrated by the record, to plead him guilty to all four counts that he was charged with in order to avoid a standardized plea agreement and a standardized admission of drug quantity and drug purity. That was the only reason to enter a plea to all four counts of that nature and to preserve the right to appeal to this court, which is prohibited by the standard plea agreements. He did so and he pled that in that manner specifically to try and get a fair hearing as to drug quantity at the time of sentencing, which he did not achieve. And when it became clear he would not achieve that, he sought to withdraw his guilty plea. Now, it was not a model of detail in his motion to withdraw the plea. Counsel did not have him sign a declaration of his own understanding or his own intentions. And that may be a serious defect in that motion. But we think counsel laid out. He was not asked if he wanted a hearing on the quantity by the court. He was at the 11th hour in sentencing after many continued hearings after his motion to withdraw his guilty plea had been denied. So he knew he would be being sentenced. And at that point, he chose not to risk the 30 year sentence that had been or was later discussed by the judge. Well, thank you. Thank you. Stand submitted. Come to the next case. U.S. versus Dennis Perry.
judges: B. Fletcher, Pregerson, Canby